# ·The Reading Industrial Manufacturing Co. *et al.* *versus* Graeff.

1. Parties in a cause may agree that the facts shall be found and reported by a third person mutually chosen, or selected by the court with their approbation, instead of agreeing to a case stated.

2. The facts found may be considered incorporated in the agreement as if originally introduced.

3. The authority for the court to enter judgment is implied, although not expressly mentioned.

4. The Act of June 16th 1836, sect. 3 (Arbitration), confers such authority.

5. In a pending suit, it is not necessary in a reference under the 3d sect. of Act of 1836, to agree that it should be made a rule of court.

6. Such consent will be implied when it appears to be the intent; a reference to the pending action will make it such in the absence of a contradictory provision.

7. A reference to one is as good as a reference to several.

8. A merchant, upon orders of a manufacturing company, under the Act of April 1849, furnished provisions, &c., mentioned in the 2d sect. of the Act of 1854 (a supplement), to the hands of the company, and by arrangement the company took up the orders monthly by giving their notes. *Held,* this was within the 2d section and the stockholders were liable.

9. The mode adopted was for the convenience of the company and did not change the nature of the contract.

10. The orders were in the ordinary course of the company's business, and not contrary to the Act of April 21st 1849, restraining corporations from issuing obligations not redeemable in coin, &c.

11. A party to a contract in violation of a statute, although the prohibition be only under a penalty, cannot recover against the other party even if he have received a full consideration.

March 8th 1870.   Before THOMPSON, C. J., AGNEW and SHARS-WOOD, JJ.   READ, J., at Nisi Prius.

Error to the Court of Common Pleas of *Berks county :* No. 47, to July Term 1869.

This was an action of debt, by Moses K. Graeff against The Reading Industrial Manufacturing Company, Jeremiah Miller and others, stockholders in the company. The writ was issued August 3d 1861.

The company had been organized in November 1857, under the General Manufacturing Law of April 7th 1849, Pamph. L. 563, Purd. 689, and its supplements, one of which was passed March 27th 1854. By the 2d section of that act, Pamph. L. 215, Purd. 694, pl. 32, it is provided that "the stockholders * * * shall be jointly and severally liable in their individual capacities, only for debts due to miners, quarrymen and other laborers, employed by such companies, and for machinery, provisions, merchandise, country produce, and materials furnished for said companies respectively," &c. The action was brought under this section on notes given by the company to the plaintiff. After some progress had

been made in the trial, the jury was discharged, and the following order was made by the court :—

"Edward E. Pearson, Esq., is appointed commissioner to take testimony in this case, to ascertain and report facts, and state the account between Moses K. Graeff, the plaintiff, and the Reading Industrial Manufacturing Company. The whole evidence submitted to the commissioner, to be by him reported to the court, is rendered necessary, by the nature and circumstances of the case, and is expressly assented to by the counsel for the parties. And by express agreement of the parties, the rights of either and any party to a review of the record, by writ of error, from the Supreme Court, for any cause of error which could be alleged, if the trial of the facts were had before a jury, is fully reserved. The report of the commissioner shall be subject to all legal objections to the competency of witnesses and the legality of the evidence.

"The commissioner in his report is required to specify the different classes of indebtedness of the said company to the plaintiff, and to state the general nature of the transactions on which each class of indebtedness shall appear to have been founded. The fees of the commissioner and the costs accruing before him, to abide the event of the suit."

Aug. S. Sassaman, Esq., was afterwards appointed commissioner in place of Mr. Pearson.

The commissioner reported the facts in detail; and referring to the orders, &c., he also reported : * * *

"After this company got under way, they dealt with Moses K. Graeff, who kept a country store near their works. They arranged with him to give to their hands such of the necessaries of life as they should require upon the presentation of the company's orders, which was accordingly done. The orders were always kept to the end of the month, when they were settled for and notes given for them, which were to be in full satisfaction for the articles of merchandise furnished to the hands, when they were paid. All the receipts given in the receipt book of the company by Graeff, upon the reception of notes for the orders were precisely of this form. The orders were all payable in merchandise and were so paid by Graeff. There were no orders produced before your commissioner, except those for April 1860. It is said in the testimony that these were the only orders in the possession of Graeff, the others having all been returned to the company, and their place supplied by notes given and receipts for those notes according to the form of notes before the commissioner. * * * It is quite clear as a fact, that orders were given for the whole period, as alleged, for flour and merchandise, and that Moses K. Graeff filled them during all this time. * * * According to the evidence offered from the books by the plaintiff, the whole amount of merchandise sold and not balanced on the book from April 1st

1859 to April 21st 1860, inclusive, is　　.　　.　.　$5031.01

The amount for flour orders filled during February and
　　March 1860, is　　.　　.　　.　　.　　.　　.　　394.87

　　　Altogether,　　.　　.　　.　　.　　.　　.　　.　$5425.88

" This is the state of the account without calculating any interest of the amounts as they appear upon the book added at the end of each month.

" It is alleged by the plaintiff, that for these monthly amounts there were notes given at the end of each month, payable respectively in sixty days and in four months, the amounts each month being divided into halves. This is sustained by the testimony of witnesses, and the notes."

The commissioner then gives a statement of the notes, with costs of protest and interest, amounting in the whole to $7072.11.

He then proceeds : " They all were in satisfaction and payment of merchandise and flour orders when paid. Note No. 11 is not signed in the same way as the other notes ; but this note was given in renewal of another note or notes, previously given by the Industrial Manufacturing Company to Moses K. Graeff for merchandise furnished to operatives.

" It will be observed that the above statement does not include the April orders of 1860, for which no note was given. * * * On the amount of the month, to wit: on $488.65 I have allowed six months' credit and added the interest $192.03 up to June 24th 1867, making the sum of　　.　　.　　.　　.　　$680.68

Add to this the amount of notes to same date　　.　　7072.18

　　Whole amount of indebtedness　　.　　.　　.　$7752.86

* * * " The notes presented to the commissioner and which are in evidence, are given for the balances ; in fact, they nearly all correspond with the very figures of the books. Those which the witnesses say are renewals, are the only ones that differ from the books materially. These notes do not correspond with the orders per month on the store of Mr. Graeff. But in all these cases the company has charges against him which are deducted before the notes have been given.

* * * " The commissioner understanding it to be his duty only to present this case to the court as it is presented before him, having nothing to do by way of argument or decision, offers this to the court as the result of his appointment."

The report of the commissioner was accompanied with all the oral testimony heard by him, together with copies of all the book entries, statements of orders, and other documents produced before him.

January 18th 1868, a rule was granted to show cause why judgment should not be entered in favor of plaintiff upon the report

[Reading Industrial Manufacturing Co. *v.* Graeff.]

of the commissioner.    December 7th 1868, the rule was made absolute "and judgment entered in favor of the plaintiff for $7752.86, with interest from the 24th day of June 1867, to this day, on the principal of the notes and orders ascertained in the commissioner's report.    The prothonotary will make the calculation and enter judgment as of this day for aggregate amount. Same day judgment entered in favor of the plaintiff for $8433.50, the amount having been ascertained by the prothonotary."

April 8th 1869, the court granted a rule to show cause why the judgment entered in this case shall not be stricken off for want of power in the court to enter any judgment on the report of the commissioner.    April 24th 1869, the court (W. J. Woodward, J.) discharged the rule.

The defendants removed the case to the Supreme Court, and assigned for error:—

1. Entering judgment for the plaintiff below.

2. Entering judgment on the report of the commissioner, the facts being insufficient to warrant such judgment, especially as the report does not find and state whether the arrangement made with the plaintiff below and the orders given and sales made in pursuance of it, were in the ordinary course of business or not.

3. Refusing to strike off the judgment on motion of the counsel of the defendants below, for want of power in the court to enter the same on the report of the commissioner.

*T. E. Franklin* (with whom were *H. Maltzberger, W. P. Baird* and *J. S. Livingood*), for plaintiffs in error.—The first question is, had the court power to direct a reference and appoint a commissioner, with the duties assigned, in this case : Cook *v.* Shrauder, 1 Casey 314.    The Act of 16th June 1836, § 3, Pamph. L. 718, Purd. 51, pl. 3, gives the parties in a suit a right to consent to a rule of court to refer all matters in controversy in such suit to referees, with a reservation of the matters of law for the disposition of the court, and the report of such referees, setting forth the facts found by them, shall have the same effect as a special verdict upon which judgment can be entered.    Here was simply a report of testimony to the court.    No Act of Assembly gives power to the court to appoint a referee or commissioner, under the circumstances, for any other purpose. than, with consent, to find and report facts.

2. There is an insufficiency of facts found : Diehl *v.* Ihrie, 3 Wharton 148 ; Berks County *v.* Pile, 6 Harris 497 ; Holmes *v.* Wallace, 10 Wright 267 ; Kinsley *v.* Coyle, 8 P. F. Smith 462 ; Cook *v.* Shrauder, 1 Casey 312 ; Whitesides *v.* Russell, 8 W. & S. 47 ; Johnson *v.* Fritz, 8 Wright 452.

The debt against the corporation is not one upon which a recovery can be had against the stockholders personally : Act of

[Reading Industrial Manufacturing Co. v. Graeff.]

27th April 1854.   In Mansfield Iron Works v. Willcox, 2 P. F. Smith 377, the merchandise was sold and delivered by the plaintiff to the company, and afterwards sold by the company to its operatives.   The arrangement was illegal by sect. 1, Act of 21st April 1849, to restrain corporations from issuing obligations redeemable otherwise than in gold or silver, or in current bank notes: Pamph. L. 673, Purd. 201, p. 50; Eberman v. Reitzel, 1 W. & S. 181; Smith v. White, 1 Law Rep. Eq. Cases 625; Cannan v. Bryce, 3 B. & Ad. 179; Pearce v. Brooks, 1 Law Rep. Exch. Cases 213; Ritchie v. Smith, 6 M., G. & Scott 462; Wheeler v. Russell, 17 Mass. 258; 2 Kent's Com. § 466.   Act of March 22d 1817, § 2, 6 Sm. L. 441, Purd. 94, pl. 59, prohibits the issuing by a corporation, except a bank, for circulation any notes, &c.   The Act of April 21st 1849 was for the protection of laborers; such laws are to be construed in their favor: Catlin v. Ensign, 5 Casey 264; Firmstone v. Mack, 13 Wright 387; Smith on Master and Servant 23.

B. F. Boyer, for defendant in error.—The defendants had a right to agree, and after contesting before commissioner and court they cannot object: Henneigh v. Kramer, 14 Wright 520; Brooke v. Bannon, 3 W. & S. 382; Christman v. Moran, 9 Barr 487; Browning v. McManus, 1 Whart. 177; Graham v. Graham, 2 Jones 128; Mitchell v. Wilhelm, 6 Watts 259; Bemus v. Clark, 5 Casey 251; Gallup v. Reynolds, 8 Watts 425; McAdams v. Stillwell, 1 Harris 90; Wall v. Fife, 1 Wright 394; Hughes v. Peaselee, 14 Id. 257; Millar v. Creswell, 3 Barr 449.   If the issuing of the orders was illegal it was the company's own wrong, and a fraud upon the plaintiff, and they cannot now set it up to defeat a recovery against them: Camp v. Puloer, 5 Barb. 91; De Groff v. Amer. Linen Thread Co., 35 Id. 375; Moss v. Rossie Lead Mining Co., 5 Hill 137; Nellis v. Clark, 4 Id. 424; Mosly v. Mosly, 15 N. Y. 334; Gray v. Hook, 4 Id. 449; Westfall v. Jones, 23 Barb. 9; Barton v. Plank Road, 17 Id. 379; Hooker v. Vandewater, 4 Denio 349; Lestapies v. Ingraham, 5 Barr 81. These notes were security, not loans: Utica Ins. Co. v. Scott, 19 Johns. 77; Moss v. McCullough, 7 Hill 290; Spear v. Crawford, 41 Wend. 20; Stey v. Brown, 20 Johns. 66; Harger v. McCullough, 2 Denio 119; Allen v. Sewall, 2 Wend. 327; Baily v. Bancker, 3 Hill 188; Young v. Beardsly, 11 Paige 93.

The opinion of the court was delivered, March 21st 1870, by

SHARSWOOD, J.—It is necessary to determine as preliminary to the consideration of the principal questions which arise upon this record, whether the court below had power to enter judgment upon the report of the commissioner.   He was appointed " to take testimony in this cause, to ascertain and report facts, and to

[Reading Industrial Manufacturing Co. *v.* Graeff.]

state the account between Moses K. Graeff, the plaintiff, and the Reading Industrial Manufacturing Company. The whole evidence submitted to the commissioner to be by him reported to the court. This reference, in the judgment of the court, is rendered necessary by the nature and circumstances of the cause, and is expressly assented to by the counsel for the parties." It is not easy to comprehend why the parties to a cause pending in court by their attorneys, instead of agreeing to a case stated in the nature of a special verdict, may not consent that the facts shall be found and reported by some third person mutually chosen or selected by the court with their approbation. *Verba illata inesse videntur.* The facts found may well be considered as incorporated with the agreement as if they had been originally inserted. It is true, there was here no express consent that the court should enter judgment on the report, but it was necessarily implied. The whole proceeding would have been nugatory without it. What is added confirms this necessary implication: "And by express agreement of the parties, the right of either and any party to a review of the record by writ of error from the Supreme Court, for any cause of error which could be alleged, if the trial of the facts were had before a jury, is fully reserved." The gentlemen who made this agreement certainly knew that nothing but a final judgment was the subject of a writ of error from the Supreme Court.

But if there was any doubt of the power of the court under such agreement, it is removed by the 3d section of the Act of Assembly relating to reference and arbitration, passed June 16th 1836, Pamph. L. 715. That act makes it lawful for the parties to consent to a rule of court for referring all matters of fact in controversy to referees, "reserving all matters of law arising thereupon for the decision of the court; and the report of such referees, setting forth the facts found by them, shall have the same effect as a special verdict, and the court shall and may proceed thereupon in like manner as upon a special verdict, and either party may have a writ of error to the judgment entered thereupon, as in the case of a judgment entered upon special verdict." Here was clearly a consent to a rule of court, and such a rule actually made and entered of record, which satisfies all the formal requisitions of the act: Benjamin *v.* Benjamin, 5 W. & S. 562; Millar *v.* Criswell, 3 Barr 449. But in truth it is not necessary in the case of a pending suit that there should be an agreement to make it a rule. Such consent will be implied whenever the intent of the parties is apparent, and a simple reference to the pending action will make it so in the absence of a contradictory provision: McAdams's Ex'rs. *v.* Stilwell, 1 Harris 90; Buckman *v.* Davis, 4 Casey 211. It cannot be pretended that a reference to one is not as good as a reference to several, though the word is used in the section in the plural, but it is "referees

[Reading Industrial Manufacturing Co. v. Graeff.]

as aforesaid," and the 1st section to which only "aforesaid" relates, provides expressly for a submission "to the award or umpirage of any person or persons." Considering the commissioner as a referee, there was therefore full power in the court to enter such a judgment upon it as the case warranted.

The merits of the controversy, upon the facts as reported by the commissioner or referees, depend upon two questions only, and those fortunately of simple and easy solution, requiring neither argument nor research.

The first is, whether the claim of the plaintiff below is within the provisions of the 2d section of the Act of Assembly of March 27th 1854, Pamph. L. 215. That section declares "that the stockholders in all companies incorporated in pursuance of the provisions of the act to which this is a supplement, and the several supplements thereto, including this act, shall hereafter be jointly and severally liable in their individual capacities, only for debts due to miners, quarrymen and other laborers employed by such companies, and for machinery, provisions, merchandise, country produce and materials furnished for said companies respectively, to be enforced and collected in the manner provided for in the act to which this is a supplement."

It is contended that this provision applies only to a sale in the course of the ordinary business of the corporation, and not to a special contract or arrangement such as the commissioner reports to have existed in this case. In Weiss v. The Mauch Chunk Iron Company, 8 P. F. Smith 295, a firm agreed to transfer all their effects at an appraised valuation to compose the capital stock of a manufacturing company, when it should be formed, and to subscribe for its stock to the amount of the appraisement, the company issuing the stock therefor. Upon the allegation that the company had refused to issue the stock, the firm brought an action against the corporation for the appraisement, claiming to make the stockholders individually liable under this section. It was held that the act evidently contemplated an ordinary sale and delivery to the company in the course of its usual business, and had no application to such a contract as was the foundation of the suit in that case. The contract here, however, was entirely different. On the facts reported by the commissioner, we think that the claim of the plaintiff below was for provisions and country produce sold and delivered by him to the company in the usual course of their business. The mode adopted for transacting it was for the convenience of the company and did not change the nature of the contract. By a special arrangement with the plaintiff they paid their workmen and employees with orders drawn upon him for such goods, which he delivered to the workmen. Had it been reversed, and the plaintiff sold and delivered directly to the com-

14 P. F. Smith—26

pany, and they then paid their workmen with the goods it would evidently have been the same thing.

But the most serious contention has been that this arrangement between Graeff and the corporation was in violation of the provisions of the Act of Assembly, passed April 21st 1849, Pamph. L. 673, entitled "An Act to restrain corporations from issuing obligations redeemable otherwise than in gold and silver or in current bank notes." It declares that it shall not be lawful for any corporation to issue "any certificate, check, order or due-bill or acknowledgment of indebtedness of any description for any purpose whatsoever, payable or redeemable in any goods, property or effects, or payable or redeemable in anything except in gold and silver :"—with a proviso that the section "shall not be construed so as to prevent any corporation from drawing orders in the ordinary course of business, not intended for circulation or in payment of interest, and that such orders shall not be negotiable." It may be conceded as a general and well established rule of law that a party to a contract in violation of a statute, even if the prohibition only be under a penalty, cannot recover against the other party though in *pari delicto*, and though such party may have received the full consideration—however ungracious and abhorrent to our sense of justice such a defence may be. The rule is one of policy and only to be vindicated on that ground. It is unnecessary to inquire whether it is applicable under this Act of Assembly, as we are clearly of opinion that the orders issued in this case were "in the ordinary course of business, not intended for circulation," and therefore within the saving of the proviso. The act declares that such orders shall not be negotiable —an unnecessary provision; for an order, payable in goods, is clearly not so on general principles: Fahnestock *v.* Schoyer, 9 Watts 102. The orders issued or to be issued under the arrangement between Graeff and the corporation were of this character. "They arranged with him," says the commissioner, "to give to their hands such of the necessaries of life as they should require upon the presentation of the company's orders, which was accordingly done." This disposes of all the errors assigned.

Judgment affirmed.